E. MANUEL BELVILLE, Plaintiff-Appellant, v. ILLINOIS RACING BOARD, Defendant-Appellee.

First District (3rd Division)   No. 84—1452

Opinion filed December 28, 1984.

Thomas F. Burke, of Phelan & Doyle, Ltd., of Chicago, and Allen J. Kincaid, of Brush, Colorado, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Susan C. Weidel, Assistant Attorney General, of Chicago, of counsel), for appellee.

JUSTICE McNAMARA delivered the opinion of the court:

Plaintiff, E. Manuel Belville, appeals from an order of the circuit court of Cook County which upheld a decision of defendant Illinois

Racing Board. Defendant ordered that plaintiff's racing license as a jockey be suspended for life for possession of a battery on the grounds of Sportsman's Park racetrack on March 30, 1983. Possession of a battery, a small electrical device used to affect the outcome of races by shocking and stimulating racehorses, is prohibited by the Illinois Horse Racing Act and is grounds for suspension or revocation of a racing license. Ill. Rev. Stat. 1983, ch. 8, pars. 37—37(a), (c).

On appeal, plaintiff contends that defendant's decision is contrary to the manifest weight of the evidence; that the statute involved is unconstitutionally vague; that defendant acted unreasonably in imposing a lifetime suspension as a penalty and thus denied due process to plaintiff; that since the board of stewards exonerated plaintiff, defendant could not review that exoneration; and that defendant improperly refused to disclose the identity of its informant.

On March 30, 1983, plaintiff was scheduled to ride the horse Gimme Mo in the first race at Sportsman's Park. Plaintiff was hired on March 29 when it was learned that the original jockey had a scheduling conflict. Each horse entered in a race has a pony person who, while riding a pony, leads the racehorse and jockey from the paddock to the starting gate and controls the horse during the prerace warm-up. The pony person for Gimme Mo in the race was Lisa Zentner, who was hired that morning, also as a result of a scheduling conflict with the original pony person.

Approximately 20 minutes before the race, Jack Halloran, director of security for the racetrack, received a tip from an informant that at the starting gate an electrical device would be given to the jockey on the No. 4 horse, Gimme Mo, in the first race and would be used by the jockey during the race. In response to the tip, Halloran and three security officers stationed themselves in the warm-up area of the track.

One of the officers, Gene Oliver, observed the horses as they moved down the track. After the first three horses passed him, Oliver walked onto the track and called for the No. 4 horse. Plaintiff and Zentner continued down the track and Oliver called them a second time. Before the two riders returned to Oliver, a battery fell between plaintiff and Zentner onto the track. Another officer retrieved the battery and gave it to Oliver.

After a hearing, the board of stewards, on April 2, 1983, found Zentner guilty of possession of a battery and suspended her racing license for three years. Zentner appealed to defendant, and after a hearing, defendant reversed the stewards' ruling and reinstated Zentner's license. Defendant also issued a rule to show cause contain-

ing a complaint against plaintiff for possession of a battery. After conducting hearings, defendant found that plaintiff possessed a battery on March 30 and suspended his racing license for life. The trial court upheld that decision.

Halloran testified at the Zentner hearing and at plaintiff's hearing that on March 30 he stood beside the fence with a view of the horses on the track. As plaintiff and Zentner passed in front of him, Halloran saw an object, later determined to be a battery, drop from Zentner's right hand. Halloran stated that Zentner had the lead to plaintiff's horse in her left hand, and her right hand was empty.

Oliver testified at both hearings that after he shouted at plaintiff and Zentner to bring their horses to him, he saw plaintiff sit back on his horse and move his hands toward his waist. Oliver observed plaintiff fumbling with his hands and saw his hands go to his belt line. At that time, Zentner was holding the reins to her pony in her left hand and the lead to plaintiff's horse in her right hand. Oliver saw the two riders' hands move together, and the battery fell from one of the four hands. Oliver was unable to say from whose hand it fell. After the officer who recovered the battery gave it Oliver, Oliver pressed one prong of the battery and heard a buzzing sound. That sound indicated that the battery was live. Oliver testified that he signed the complaint which charged Zentner with possession of a battery. He did not prepare the complaint and merely signed it at the request of superiors. Oliver also prepared a report which summarized information received from Halloran and the other officers. This report recited that plaintiff and Zentner appeared to handle an object which fell from Zentner's hand. After reviewing the report, Oliver was still unable to say from whose hand the battery fell.

Don Morley, a pony person for another horse in the race, testified at both hearings that when Oliver called for the No. 4 horse, Morley saw plaintiff with his right hand inside his waistband. Morley did not see plaintiff's hand come out of his waistband, nor did he see the battery fall to the track. Morley saw that Zentner was holding the pony reins in her left hand and the lead to plaintiff's horse in her right hand.

Gene Ford, another pony person in the race, testified at plaintiff's hearing that he was looking directly at plaintiff after Oliver called for the No. 4 horse. Ford saw plaintiff reach toward his pants and then place his hand into the top of his waistband. Ford testified at Zentner's hearing but was asked only if he had seen a battery.

Laurie Lebeck, the person who hired Zentner, testified at Zentner's hearing that she saw a battery in plaintiff's hand in 1982.

At plaintiff's hearing, Lebeck testified that she had never seen plaintiff with a battery.

Heriberto Arroyo, the senior steward in Illinois, testified at both hearings. Arroyo knew plaintiff for 16 years, and in that time plaintiff's integrity was never questioned. Arroyo had never seen a pony person hold both the pony's reins and the racehorse lead in one hand. Arroyo believed that it would be difficult or impossible for a pony person to pull up from a slow gallop if the reins and lead were held in one hand. Arroyo also believed that a jockey's belt was one of the most logical places to conceal a battery. Arroyo stated at plaintiff's hearing that the witnesses at Zentner's hearing did not testify under oath.

Benjamin Winnett, a pony person in the race, testified at the Zentner hearing that when Oliver called for the No. 4 horse, Winnett was able to observe Zentner's hands. She held her pony reins in her left hand and the lead to the racehorse in the right hand. Winnett was unable to see plaintiff's hands and did not see the battery fall to the ground.

Roger Elie, another pony person in the race, testified at plaintiff's hearing that he did not see plaintiff place his hands anywhere inside his clothes. Elie did not remember seeing Morley or any other pony person to the right of plaintiff alongside the inside rail.

Lisa Zentner testified at both hearings that she did not know the name of the jockey or the horse she was going to pony until just prior to the race. When Oliver called plaintiff and her over to him on the track, she had the pony rein in her left hand and the lead to the horse in her right hand. Zentner testified that when Oliver called, plaintiff sat back in his saddle and said, "Don't turn yet." Zentner ignored plaintiff's request and turned the horses toward Oliver. Zentner was looking at Oliver and did not see plaintiff drop anything nor did she see his hands go to his waist.

Plaintiff testified at his hearing that when Oliver called, the horses were at a slow gallop. Plaintiff said, "Don't turn like that" when Zentner attempted to turn his horse too quickly. Plaintiff stated that his whip was in his right hand and that his hands never went inside his pants. His hands were in front of his waist in order to pull up his horse and to prevent stumbling. He did not have a battery, and he did not see Zentner drop a battery. Plaintiff believed that Zentner and her boyfriend Frank Damron were conspiring against him because of anger at the stewards' unfavorable ruling against Zentner. Plaintiff also testified that Morley and Ford lied at the hearing at Damron's request.

Plaintiff initially contends that defendant's decision suspending his racing license for life was contrary to the manifest weight of the evidence.

The permissible scope of judicial inquiry concerning factual determinations by administrative agencies has been limited to ascertaining if the agency decision was contrary to the manifest weight of the evidence. (*Basketfield v. Police Board* (1974), 56 Ill. 2d 351, 307 N.E.2d 371.) The findings and conclusions of an administrative agency regarding questions of fact are to be considered *prima facie* true and correct. (*Douglas v. Daniels* (1978), 64 Ill. App. 3d 1022, 382 N.E.2d 90.) And whether plaintiff had possession of the device was a question of fact to be determined by the trier of fact. See *People v. Ortiz* (1980), 91 Ill. App. 3d 466, 414 N.E.2d 1072.

■ While the testimony was disputed, there was ample, consistent circumstantial evidence in the record to support defendant's decision that plaintiff was in possession of the battery which was dropped on the racetrack between his horse and Zentner's pony. Three witnesses, Oliver, Morley and Winnett, testified that both of Zentner's hands were occupied at all times. Three witnesses, Oliver, Morley and Ford, testified that they observed plaintiff's hands go to the waistband of his jacket pants. The only issue before defendant was which of the two riders had possession of the battery. Defendant's decision that it was plaintiff, not Zentner, who had possession of the battery is supported by the manifest weight of the evidence.

Contrary to plaintiff's assertion, there was also ample evidence presented that the battery which was recovered on the racetrack was functioning. Oliver testified that when the battery was retrieved from the track he tested it and found that it was a live battery.

Under his manifest weight of the evidence argument, plaintiff also challenges the lack of proof of the chain of custody of the battery. At his hearing, however, plaintiff, who appeared *pro se,* stated that he was not contesting the chain of custody of the battery. Consequently, plaintiff has waived the issue.

■ We likewise reject the argument there was a failure to establish that use of the battery would have any effect on the race. We hold that upon proof a jockey had possession of a functioning battery on his person on the racetrack, defendant was entitled to find that device was to be used to affect the speed of the horse in violation of the Act.

■ Plaintiff next contends that section 37—37(a)(3) of the Illinois Horse Racing Act is unconstitutionally vague. The statute reads as follows:

"Sec. 37. (a) It shall be unlawful for any person:
* * *

(3) to have in his possession within the confines of a race track, stables, sheds, buildings or grounds, or within the confines of a stable, shed, building or ground where horses are kept which are eligible to race over a race track of any racing association or licensee, any appliance other than the ordinary whip or spur which may or can be used for the purpose of stimulating or depressing a horse or affecting its speed at any time * * *." Ill. Rev. Stat. 1983, ch. 8, par. 37—37(a)(3).

A statute does not violate the due process clause on the ground of vagueness if the duty is set forth in terms definite enough to serve as a guide to those who must comply with it. (*Chastek v. Anderson* (1981), 83 Ill. 2d 502, 416 N.E.2d 247.) In determining validity, consideration must be given not only to the language of the statute but also to its purpose and the evil the statute is designed to correct. *People v. La Pointe* (1981), 88 Ill. 2d 482, 431 N.E.2d 344.

The statute before us is not unconstitutionally vague. It has clear meaning and contains language precise enough to serve as a guide to those who must comply with it. (See *Gillilan v. Illinois Racing Board* (1980), 89 Ill. App. 3d 726, 411 N.E.2d 1374.) The statute also serves the purpose of protecting the public interest by ensuring that horse racing is conducted honestly.

■ Plaintiff also contends that defendant deprived him of due process and acted unreasonably in suspending his license for life. Plaintiff argues that in imposing such a severe sanction defendant did not have sufficient guidelines and standards. We do not agree.

The Act gives defendant broad discretionary power to regulate horse racing, and the statute specifically authorizes defendant to suspend or revoke licenses for conduct which is prohibited. (Ill. Rev. Stat. 1983, ch. 8, par. 37—16(a).) The statute satisfies due process by plainly informing a licensee of the conduct which is prohibited and the sanctions which can be imposed. Nor do we believe that the imposition of a lifetime suspension was unreasonable or harsh. The conduct of a jockey found in possession of a battery on a racetrack warrants the most severe sanction available. (*Feliciano v. Illinois Racing Board* (1982), 110 Ill. App. 3d 997, 443 N.E.2d 261.) Defendant acted reasonably in suspending plaintiff's racing license for life.

■ Plaintiff also maintains that by virtue of administrative *res judicata* defendant was not authorized to issue its rule to show cause against him. Plaintiff argues that the action was untimely and that since the board of stewards had exonerated him, defendant had no au-

thority to further act.

On April 2, 1983, the stewards conducted a hearing and found Zentner guilty of possession of a battery and suspended her license for three years. On April 14, Zentner appealed that decision to defendant and, on May 3, defendant determined that Zentner's appeal was timely. Defendant conducted a hearing on May 19, and, after considering all the evidence, reversed the stewards' ruling and reinstated Zentner's license. At the same time, defendant determined that the Zentner hearing disclosed probable cause to charge plaintiff with possession of a battery, and it issued a rule to show cause. Thereafter, defendant conducted extensive hearings and on January 28, 1984, it ordered plaintiff's lifetime suspension.

The Act empowers defendant to investigate any claimed violations and to take appropriate legal and disciplinary action. (Ill. Rev. Stat. 1983, ch. 8, par. 37—9(d).) Defendant acted completely within its statutory power when it reversed the stewards' ruling and then initiated action against plaintiff. Defendant entered the present order only after conducting several hearings and after considering all the evidence. Its actions were completely proper.

■ We find no merit in plaintiff's final contention that he had a right to learn the identity of the informant and that his failure to request that information does not constitute waiver. At the hearing, defendant's counsel informed plaintiff that defendant would be ready to establish the reliability of its informant. Plaintiff never asked the identity of the informant and never questioned Halloran about the informant. Plaintiff has waived the issue.

For the foregoing reasons, the judgment of the circuit court of Cook County upholding the decision of the Illinois Racing Board is affirmed.

Judgment affirmed.

RIZZI, P.J., and WHITE, J., concur.