DAN J. BENEFIEL, Plaintiff-Appellee, v. THE ILLINOIS RACING BOARD, Defendant-Appellant.

First District (5th Division)   No. 85—1779

Opinion filed January 30, 1987.—Rehearing denied March 4, 1987.

Neil F. Hartigan, Attorney General, of Springfield (Roma Jones Stewart, Solicitor General, and Kathryn A. Spalding, Assistant Attorney General, of Chicago, of counsel), for appellant.

Ashley S. Rose, Ltd., of Naperville, for appellee.

JUSTICE LORENZ delivered the opinion of the court:

Following an evidentiary hearing, the defendant-appellant, the Illinois Racing Board, found that plaintiff-appellee, Dan J. Benefiel, had violated a Board rule by possessing on a racetrack hyaluronic acid, a chemical substance not approved by the Federal Drug Administration for use on horses. Benefiel, a veterinarian, was fined $500 and his occupation license was suspended for 60 days. However on administrative review the circuit court of Cook County reversed that decision as against the manifest weight of the evidence, solely because the Board failed to have the substance at issue analyzed.

We reverse.

Illinois Racing Board Medication Rule C9.12 prohibits persons from having in their possession within any racetrack any chemical substance not approved for use on horses by the FDA unless they have prior written approval from the State veterinarian. It is undisputed that on November 19, 1982, a search of plaintiff's car within the racetrack enclosure at Maywood Park disclosed three vials containing a substance labelled "hyaluronic acid for experimental use only." It is also undisputed that the Illinois Racing Board subsequently established that hyaluronic acid was not FDA-approved for use on horses and plaintiff did not have written permission to possess this drug at the racetrack. In this court the plaintiff challenges only one element of the Illinois Racing Board's finding that he violated Rule C9.12, whether the substance found in his car was in fact hyaluronic acid. Accordingly our summary of the facts will focus on the evidence relevant to that question.

About nine months before the Board's hearing, plaintiff furnished it with a response to its request to admit facts. In that document plaintiff stated:

"On or about November 19, 1982, I, Dan J. Benefiel, DVM, possessed three bottles of hyaluronic acid ***. I possessed three vials of hyaluronic acid which were labeled 'for experimental use only' which I did not know were in my car at the racetrack because they were accidentally put in there by my assistant, Holly Sipples, who restocks and cleans out my vehicle every day to go to the racetrack."

Plaintiff extensively discussed the virtues of hyaluronic acid, referring to his review of over 150 research papers concerning the substance. He also complained that he had been unable to obtain a State veterinarian's written approval to possess the substance.

The plaintiff's statement was subsequently introduced into evi-

dence at the Board hearing. At the hearing plaintiff's counsel called Jeremiah O'Connor, a Department of Law Enforcement agent who participated in the search of plaintiff's car. O'Connor testified that the search was made because a horse owner told them plaintiff had been administering German acid to his horse. O'Connor believed German acid to be another name for hyaluronic acid.

The plaintiff testified that his veterinary practice at the racetrack was conducted out of his vehicle, where he kept his medical supplies. At the time of the search, his assistant, Holly Sipples, was responsible for stocking the vehicle. Plaintiff was not aware that the three vials were in the car. His assumption was that Holly Sipples must have placed them there.

Plaintiff admitted that he had stored these vials in his clinic. He was contemplating performing experiments with them and had planned to send them to a laboratory for evaluation. He had not tested the contents of the vials and thus was not 100% certain that they contained hyaluronic acid.

Plaintiff denied having administered the drug to any horses. However, on cross-examination, on the advice of counsel, he refused to state whether he had indicated to Department of Law Enforcement agents that he had administered the drug to horses. He also testified that a drug company had sent him as much hyaluronic acid as he wanted. Specifically, he had ordered these materials from the Western Serum Company as hyaluronic acid. Plaintiff indicated that he had ordered medications often from this company and it seemed to be a respectable one. He also testified that the company had subsequently gone out of business.

In rebuttal Department of Law Enforcement agent O'Connor testified that after the vials were discovered, the plaintiff, at O'Connor's request, listed on an index card the horses he treated with hyaluronic acid.

On October 20, 1984 the Illinois Racing Board entered an order finding that plaintiff had violated IRB Rule C9.12. Plaintiff's occupation license was suspended for 60 days and a $500 fine was imposed.

Plaintiff then filed a complaint for administrative review in the circuit court of Cook County. Upon consideration of briefs and oral arguments, the circuit court entered an order finding the Board's decision to be contrary to the manifest weight of the evidence. The court specifically held:

"Without submitting the substance allegedly possessed by Dan J. Benefiel to a chemical analysis, the decision of the Illinois Racing Board finding Benefiel guilty of the possession of a

chemical substance not approved by the [FDA] was against the manifest weight of the evidence."

On administrative review the agency's factual findings are deemed to be *prima facie* true and correct (Ill. Rev. Stat. 1983, ch. 110, par. 3—110; *McCabe v. Department of Registration & Education* (1980), 90 Ill. App. 3d 1123, 413 N.E.2d 1353.) The reviewing court may not hear additional evidence or conduct a hearing *de novo. (Lamar v. Illinois Racing Board* (1977), 55 Ill. App. 3d 640, 370 N.E.2d 1241.) Rather, the duty of the reviewing court is to determine whether the agency's findings are contrary to the manifest weight of the evidence. *Green v. Board of Fire & Police Commissioners* (1980), 87 Ill. App. 3d 183, 408 N.E.2d 1187.

Upon review of the administrative record in this cause, we find the Board's determination to be fully supported by the evidence. There was ample evidence that plaintiff admitted ordering, possessing, and using hyaluronic acid. He displayed extensive knowledge of the qualities of the drug. The Board was not required to believe his belated contention that he could not be 100% certain that the substance he ordered and received was actually hyaluronic acid.

The plaintiff notes that the Board failed to chemically analyze the substance in the vials. But over nine months before the Board's hearing, plaintiff had clearly indicated that he was not contesting the nature of the substance. He expressly admitted possessing hyaluronic acid. Only after the Board had put on its case at the hearing relying extensively on plaintiff's admission did plaintiff attempt to challenge the identity of the substance. Under these circumstances we find inapplicable the adverse presumption ordinarily arising from a party's failure to introduce evidence which would settle a doubtful issue. See *Wilkey v. Illinois Racing Board* (1978), 65 Ill. App. 3d 534, 381 N.E.2d 1380.

Because the evidence before the Board amply supported the Board's findings, the circuit court erred in reversing that decision. Accordingly, we reverse the decision of the circuit court and reinstate the decision of the Illinois Racing Board.

The judgment of the circuit court is reversed.

Reversed.

SULLIVAN, P.J., and MURRAY, J., concur.