(No. 65098.—

HENRY LEE COLEMAN, Appellee, v. THE ILLINOIS
RACING BOARD *et al.*, Appellants.

*Opinion filed September 22, 1988.*

Neil F. Hartigan, Attorney General, of Springfield (Roma Jones Stewart and Shawn W. Denney, Solicitors General, and Nancy Albert-Goldberg and Ann Plunkett-Sheldon, Assistant Attorneys General, of Chicago, of counsel), for appellants.

Arthur E. Engelland, of Chicago, for appellee.

JUSTICE RYAN delivered the opinion of the court:

The plaintiff, Henry Lee Coleman, filed a petition for administrative review in the circuit court of Cook County after the Illinois Racing Board (Board) had suspended his groom's license for the rest of his life. The circuit court upheld the decision of the Board. The appellate court, in a Rule 23 order (107 Ill. 2d R. 23), reversed the circuit court and ordered the Board to reinstate Coleman's license (152 Ill. App. 3d 1162 (unpublished order under Supreme Court Rule 23)). We granted the Board's petition for leave to appeal under Supreme Court Rule 315 (107 Ill. 2d R. 315).

On December 3, 1981, agents of the Illinois Department of Law Enforcement were conducting routine searches of the tackrooms at Hawthorne Racetrack, wherein Coleman's living quarters were located. Coleman consented to a search of his rooms. The agents found a small quantity of marijuana (approximately 7 grams) and an electric goading device, sometimes known as a "buzzer." On December 29, 1981, after a stewards' inquiry, Coleman's groom's license was suspended for two years for possession of the goading device and concurrently for 30 days for possession of the marijuana. Coleman waived his right to be represented at the stewards' inquiry and sought no appeal to the Board after the suspension. Two weeks later, Coleman pleaded guilty

to the felony charge of possessing a goading device and received an 18-month probation sentence, which he served without incident.

At the end of the two-year suspension period, Coleman applied to have his groom's license reinstated. Counsel for the Board deposed Coleman. In March 1984, Cecil Troy, a member of the Board, conducted a hearing. Coleman was unrepresented on both of these occasions, although counsel for the Board and Troy impressed on him his right to counsel. The Board issued an order in May 1984 which permanently suspended Coleman's license and barred him from ever entering a racetrack in Illinois. The Board ruled that pursuant to the Illinois Horse Racing Act of 1975 (Ill. Rev. Stat. 1981, ch. 8, par. 37—1 *et seq.*), it was within its discretion to refuse to issue an occupation license. Section 15 of the Act states:

> "(c) The Board may in its discretion refuse an occupation license to any person:
>
> (1) who has been convicted of a crime;
>
> (2) who is unqualified to perform the duties required of such applicant;
>
> (3) who fails to disclose or states falsely any information called for in the application;
>
> (4) who has been found guilty of a violation of this Act or of the rules and regulations of the Board; or
>
> (5) whose license or permit has been suspended, revoked or denied for just cause in any other state."
> (Ill. Rev. Stat. 1981, ch. 8, par. 37—15(c).)

The Board's ruling stated that on the basis of the entire record, Coleman's conduct warranted their denial of his license under sections 15(c)(1), (c)(2), (c)(4) and (c)(5) of the statute. The Board's findings of fact and conclusions of law, within the body of the order, reveal that the criminal conviction it referred to involved Coleman's conviction for possessing the goading device, the rule violation involved his marijuana possession, and the prior

license suspension involved a fistfight in New York in 1975. The conclusion that he was unqualified to perform the duties of a groom does not appear to be supported by any factual findings concerning his competency.

The issue presented here is whether the Board, at this second hearing, impermissibly modified its previous final order of a two-year suspension, or whether the life suspension was based on an independent determination of his eligibility for a license based on additional evidence. The appellate court concluded that the Board had, without statutory authority, altered its prior two-year suspension ruling with no new evidence of wrongful acts by Coleman since the 1981 suspension. We agree and affirm the appellate court's holding.

It is well settled that findings of fact by an administrative agency are considered to be *prima facie* true and correct. (*Murdy v. Edgar* (1984), 103 Ill. 2d 384, 391; Ill. Rev. Stat. 1981, ch. 110, par. 274.) Courts will not interfere with the discretionary authority of administrative bodies unless the administrative decision is contrary to the manifest weight of the evidence (*Eastman Kodak Co. v. Fair Employment Practices Comm'n* (1981), 86 Ill. 2d 60, 76), or is exercised in an arbitrary or capricious manner (*Dorfman v. Gerber* (1963), 29 Ill. 2d 191, 196). It is also clear that under appropriate circumstances the Illinois Racing Board has issued lifetime suspensions to occupational license holders who are found with goading devices in their possession, which suspensions have been upheld. (*Feliciano v. Illinois Racing Board* (1982), 110 Ill. App. 3d 997; *Belville v. Illinois Racing Board* (1984), 129 Ill. App. 3d 970.) While we note that both these cases involved jockeys, the Horse Racing Act of 1975 states that possession of a goading device by anyone in the confines of a racetrack is *prima facie* evidence of intent to use the device. (Ill. Rev. Stat. 1981, ch. 8, par. 37—37.) We are, additionally, sensitive to the fact that

the Board's task to guarantee the honesty and integrity of horse racing in this State requires continuous vigilance, because attempts to predetermine the outcome of a race is an ever present and persistent part of horse racing. (*Feliciano v. Illinois Racing Board* (1982), 110 Ill. App. 3d 997, 1005; *Kurtzworth v. Illinois Racing Board* (1981), 92 Ill. App. 3d 564, 589.) In this case we are not determining whether it would have been proper for the Board to issue a lifetime suspension to Coleman in 1981, when he was originally suspended. We are determining whether the Board acted outside its authority when it issued the lifetime suspension, following the two-year suspension.

The Board argues its lifetime suspension of Coleman is the result of its investigation relating to his license re-application, and the new suspension is based on new and independent factors not considered during the 1981 stewards' inquiry. The Board further states that occupational licenses are issued at its discretion and that every year each license holder must reapply. Because any license holder can be denied a license at the Board's discretion when he or she reapplies, the Board argues that no license holder has a right to a new license. We are not questioning the Board's authority to deny a new license if the reapplication reveals the licensee has engaged in conduct that falls within the criteria of section 15(c), or has violated other Board rules since the prior license was issued. On the other hand, we cannot conceive that the Board believes its discretion is so wide-reaching that upon reapplication, a licensee can be denied a new license for past conduct of which the Board was fully aware when it issued a prior license. But this is precisely what the Board has done here regarding Coleman's suspension in New York.

One of the "new" pieces of evidence the Board puts forward to show its lifetime suspension was based on in-

dependent evidence of Coleman's ineligibility to be licensed involved suspension in another State. (Ill. Rev. Stat. 1981, ch. 8, par. 37—15(c)(5).) Coleman revealed to the Board this suspension in the State of New York on his first Illinois application in 1978, and in subsequent applications. The incident involved a fistfight with another track employee in 1975. New York suspended him in 1975 for two years and reinstated him in 1977. The Board was aware of this when Coleman was first licensed in Illinois in 1978 and, obviously, they had this knowledge in 1981 when he was suspended here for two years. A refusal to reinstate a license on this basis is clearly arbitrary and cannot be sustained.

Similarly, the evidence of violations of the Horse Racing Act of 1975 and Board rules involving the goading device and marijuana possession cannot possibly be considered new independent evidence of ineligibility. The Board's own stewards were fully aware of the facts and circumstances of these violations and that violation of section 37 (Ill. Rev. Stat. 1981, ch. 8, par. 37—37), to which they refer in their 1981 suspension order, is a Class IV felony. Yet, their final determination was that Coleman's conduct warranted a two-year suspension and a concurrent 30-day suspension for possession of marijuana. The Board now argues to this court that Coleman is a convicted felon, which is a factor that did not exist when his first suspension was ordered. They contend that upon his reapplication, the court's conviction for the very same act which prompted his first suspension is a new and independent factor in their determination to deny his license. They also ruled that his possession of seven grams of marijuana was not for personal use as the stewards ruled in 1981, but was possession with intent to sell or distribute, which is a more serious offense if prosecuted under the Cannabis Control Act (Ill. Rev. Stat. 1981, ch. 56½, pars. 704, 705).

The present appellate court decision, from which the Board has appealed to this court, based its holding on a previous appellate court opinion which held that an administrative agency such as the Board cannot reconsider, modify or alter its decision, unless authorized to do so by statute (*Burton v. Civil Service Comm'n* (1978), 57 Ill. App. 3d 835; *Pearce Hospital Foundation v. Illinois Public Aid Comm'n* (1958), 15 Ill. 2d 301.) Somewhat inexplicably, no one involved with this case saw fit to inform this court that we had affirmed *Burton*. We held in *Burton v. Civil Service Comm'n* (1979), 76 Ill. 2d 522, that where the statutory scheme authorizing an agency to discipline employees does not provide for modification or reconsideration, the agency cannot divide an employee's course of conduct into its component parts after the employee has been punished for that entire course of conduct and attempt to punish him anew. In *Burton* we recognized the Illinois Department of Revenue had erred when it issued the employee his first 10-day suspension. (76 Ill. 2d at 526.) That error, however, could not be rectified by the agency's going outside its statutory framework, dividing a course of conduct into separate violations and attempting to correct its error. 76 Ill. 2d at 527-28.

We believe a similar attempt is being made by the Board here to correct a disciplinary action taken by its stewards, which the Board, upon later consideration, found to be too lenient. The Horse Racing Act provides for stewards to suspend license holders pending a hearing by the Board (Ill. Rev. Stat. 1981, ch. 8, par. 37—16(b)), or to eject or exclude license holders from racetracks for proper reasons (Ill. Rev. Stat. 1981, ch. 8, par. 37—9(e)), subject to a subsequent hearing by the Board. The license holder can request a hearing by the Board following a suspension by the stewards. (Ill. Rev. Stat. 1981, ch. 8, par. 37—16(c).) More importantly, the Board

can, on its own motion, review any action by its steward by conducting a hearing (Ill. Rev. Stat. 1981, ch. 8, par. 37—16(c)), and can overrule decisions of the stewards at such time (*Belville v. Illinois Racing Board* (1984), 129 Ill. App. 3d 970). In this case, Coleman accepted the stewards' decision and punishment for both offenses. The Board did not, at that time, choose to alter its stewards' findings or punishment. Therefore, Coleman, having served his two-year suspension, was entitled to rely upon this as the final determination by the Board. The statute provides that once there is a final determination, it is only subject to review under the Administrative Review Act. (Ill. Rev. Stat. 1981, ch. 8, par. 37—16(k).) We see nothing new in terms of substantive violations of the Horse Racing Act of 1975 or Board rules presented at this second hearing that was not dealt with at the stewards' inquiry in 1981, or known to the stewards and the Board at the time of the two-year suspension. It may very well be that upon reconsideration, the Board felt the original punishment meted out by its stewards was too lenient, or that the stewards had made a mistake. The Board cannot now correct that mistake by, at a later date, denying for life an occupational license for the conduct that had already produced a two-year suspension.

There were only one or two truly new factors presented at the second hearing. One involved Coleman's conduct while a juvenile, which the Board itself said it would not consider as a falsification on his application. The other was that during the period of suspension, Coleman was unemployed. Coleman is a man of limited education, who has done nothing except work with horses his entire life. While he was on probation, he lived in Chicago with his brother, where there is little opportunity to work with horses except at a racetrack. His probation officer finally gave him permission to return to his parents' home in Mississippi. While there he

did some seasonal labor at a cotton gin. Courts have recognized that in many cases, the license represents the only livelihood of the licensee. (*Feliciano v. Illinois Racing Board* (1982), 110 Ill. App. 3d 997; *Kurtzworth v. Illinois Racing Board* (1981), 92 Ill. App. 3d 564.) Apparently, this is true in Coleman's case. For the Board to say its lifetime suspension should be predicated on the fact that Coleman did not work during his suspension, when being a groom is the only regular job he has ever had, denies the realities of Coleman's education and experience. For the reasons stated, the judgment of the appellate court is affirmed.

*Appellate court affirmed.*

JUSTICE STAMOS took no part in the consideration or decision of this case.