ANTHONY J. DE SILVA, Plaintiff-Appellant, v. BILL HARTACK *et al.*, acting Stewards of Hawthorne Race Course, *et al.*, Defendants-Appellees.

First District (2nd Division)   No. 1—89—1876

Opinion filed June 29, 1990.

Arthur E. Engelland, of Chicago, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and Tanya Solov, Assistant Attorney General, of Chicago, of counsel), for appellees.

JUSTICE HARTMAN delivered the opinion of the court:

Plaintiff Anthony De Silva, a licensed jockey, was suspended by the stewards of Hawthorne Race Course (Hawthorne) after he was found guilty of violating Rule 234 of the Illinois Racing Board (IRB). After an appeal and full hearing, the IRB upheld the suspension. Plaintiff then filed a complaint for administrative review in the circuit court. From an order affirming his suspension, plaintiff appeals, contending Rule 234 of the IRB is unconstitutionally vague and, alternatively, that his suspension was contrary to the manifest weight of the evidence.

On August 19, 1988, in the fifth race at Hawthorne, plaintiff was assigned to ride a horse named "Mr. Valentino." In a previous race held July 16, 1988 (the July race), plaintiff rode Mr. Valentino for the first time, and won. Mr. Valentino is known as a "router," or distance horse, running a stronger race over a distance of one mile or longer. A "sprint" horse, on the other hand, runs a stronger race over a distance of less than one mile. A "router" would be at a disadvantage

running against a sprint horse in a race of less than one mile.

The fifth race was a sprint race of 6½ furlongs, or three-fourths of a mile. To facilitate Hawthorne's trifecta wagering scheme, which required a minimum of eight horses to be entered in the race, track officials solicited Mr. Valentino's trainer to enter the horse in the fifth race. The trainer agreed, despite his belief that Mr. Valentino would be better suited to a longer distance race.

In the fifth race, Mr. Valentino, with plaintiff riding, was listed at 13 to 1 odds, the second-longest price in the race. Mr. Valentino broke badly out of the gate, five lengths behind the nearest horse before he started running. By the end of the race, however, Mr. Valentino was passing horses and was described by one track observer as "going well at the finish." Mr. Valentino finished sixth in the field of eight horses.

After the fifth race, the three assigned stewards reviewed plaintiff's performance and determined that he failed to ride Mr. Valentino "so as to finish as near as possible to first, and show the best and fastest race it was capable of," in violation of Rule 234 of the IRB. Plaintiff was suspended for 30 days.

Plaintiff appealed the stewards' decision to the IRB, which held several hearings. William Hartack testified he was one of three IRB stewards assigned to the fifth race. Hartack and another steward, Eric Viox, viewed the race through binoculars; a third, Thomas Scott, observed on a video monitor.

According to Hartack, the last three-eighths of a mile is the crucial part of the race. There, the jockey must use his most vigorous efforts to achieve the best possible placing. He identified two techniques riders use to urge the best possible performance from a horse: hand riding and whipping. In hand riding, the jockey loosens up on the reins, pushes or applies pressure on the horse's neck, moves his hands in a forward motion to release any restraint, and encourages the horse to go forward as fast as possible. A horse must be in balance with its head; the farther a rider can push its head forward, the farther the horse will stride to maintain its balance. The horse then runs faster with the longer stride. In conjunction with hand riding, a jockey must urge the horse with a "stick," or whip. Hand riding and whipping are the two visual criteria used by the stewards to determine whether a horse is run to the best of its ability, or conversely, whether Rule 234 is violated. Hartack noted that some riders also scream or "chirp" to the horse; in his opinion, however, it is "absolutely not" possible for a jockey to get the best performance out of a horse without utilizing at least one of the aforementioned techniques.

Hartack further explained that if these techniques are not used, the jockey is considered to be riding "under a hold," or coasting with the horse. Riding under a hold is usually employed to maintain a horse's position in the field while biding time until a later charge. The only time a jockey would ride under a hold for the entire race is when the horse is winning easily. Hartack, however, would not expect a jockey to whip or abuse a fading horse simply to demonstrate the use of his "best efforts." Nevertheless, at some point in a race, the horse had to have been "asked" to run, either by hand riding or whipping.

In the fifth race, Hartack watched Mr. Valentino almost exclusively after its bad start. He observed plaintiff did not urge the horse, either with hand riding or whipping, from the ½-mile pole to the end of the race. After the race, the stewards ordered the track veterinarian to check Mr. Valentino; she found the horse to be sound, although the front bandages were "applied rather tightly" causing slight discomfort. According to Hartack, the horse's actions during the race did not create a situation that rendered use of the techniques unreasonable or impossible. In his opinion, use of the techniques by plaintiff would have caused Mr. Valentino to finish closer. Hartack concluded plaintiff violated Rule 234.

Thomas Scott, the steward assigned to the video monitor for the fifth race, testified that, in order to ascertain whether Rule 234 is violated, he watches for hand riding and whipping. He also asserted a jockey could not get the best performance out of a horse without using these techniques. He observed no hand motion, hand riding, or whipping by plaintiff down the stretch. He thought Mr. Valentino would have finished closer if plaintiff had used the techniques, which would have overcome the disadvantages caused by the horse's bad start and inherent weakness in sprint races. He acknowledged, however, there was no written rule requiring a horse to be hand ridden or whipped during the course of a race.

Eric Viox, the third steward, agreed with Hartack's explanation of the criteria used to determine a violation of Rule 234 and his conclusions concerning plaintiff's performance. He further concurred with Hartack that plaintiff violated Rule 234 in the fifth race. He knew of no IRB rule requiring a horse to be whipped or hand ridden during a race. Eddie Arroyo, the senior steward, also agreed with Hartack's analysis of plaintiff's performance and the conclusion it violated Rule 234. He thought Mr. Valentino was "restrained from doing his best" by plaintiff.

For plaintiff, John Beach testified that, in his opinion, some horses run better under a hold and respond adversely to hand riding

and whipping. He suggested the jockey would best know the horse's preferences, especially if he had previous experience with the particular horse. He agreed that if Mr. Valentino responded negatively to the whip, it would do so consistently.

Bill Cassiday averred he was assigned by the Daily Racing Form to observe and comment on the fifth race. He described Mr. Valentino's performance as "broke poorly, was going well at the finish."

Paul Milanko, Mr. Valentino's trainer, stated the horse performed best without being whipped and when "running against the bit." On cross-examination, however, he admitted Mr. Valentino was whipped and hand ridden in the July race, which it won. He never instructed plaintiff not to whip or hand ride Mr. Valentino in the fifth race.

Plaintiff testified Mr. Valentino worked best without a whip and when "running against the bit." He explained "running against the bit" was a necessary tactic with a heavy headed horse such as Mr. Valentino. According to plaintiff, this type of horse tends to founder and get leg weary unless the jockey holds onto it and keeps the bit against its mouth; this action pulls the horse's head up, causing it to run evenly and stride properly. Plaintiff claimed he picked Mr. Valentino's head up when turning for home in the fifth race, allowing him to run against the bit. He thought the horse was running to the best of its ability. He did not use the whip because he knew the horse would not respond. On cross-examination, however, plaintiff admitted he used the whip on Mr. Valentino in the July race down the stretch. He also acknowledged he let Mr. Valentino "run on his own" in the fifth race, and did not use the whip or hand riding techniques.

Based on this evidence, the IRB made the following findings: All four of the stewards who testified were properly qualified as expert witnesses; their testimony was unanimous and uncontroverted; there are two basic techniques used by jockeys to increase the performance of their mounts, the use of a whip and hand riding; because of the lack of other efficacious methods to urge a mount, one or both of these techniques will be utilized at some point in a race by a jockey attempting to obtain the best possible performance from his horse; the only circumstance that would preclude use of these techniques occurs when a horse maintains a lead throughout the race without the need for urging; this singular circumstance was not present in this case, as Mr. Valentino broke poorly and was trailing from the start of the race; plaintiff at no point in the race urged his horse through hand riding or whipping; and, the films of the race, in evidence, corroborated the stewards' testimony. The IRB also found that plaintiff's failure to urge his horse constituted clear and convincing evidence

that he did not meet the requirements of Board Rule 234. Concluding that plaintiff "did not ride his horse so as to finish as near as possible to first place or to show the horse's best efforts," the IRB imposed a 30-day suspension.

The circuit court on administrative review found that the IRB's decision was neither contrary to the manifest weight of the evidence nor contrary to law, and entered an order that affirmed the 30-day suspension, held Rule 234 of the IRB was not unconstitutionally vague, and granted a stay for 30 days pending appeal. Plaintiff appeals.

I

Plaintiff initially contends Rule 234 of the IRB is unconstitutionally vague. Rule 234, entitled "Horse Ridden Out," provides:

"Every horse in every race must be ridden so as to finish as near as possible to first, and show the best and fastest race it is capable of at that time and shall not be eased up or coasted, even if it has no apparent chance to win first, second, third, or fourth prize, so that record of that race [*sic*] may, as truly as possible, show its real ability."

According to plaintiff, Rule 234 is unconstitutionally vague because it does not convey sufficient warning of the proscribed conduct to the jockeys.

A license to do business conferred by the IRB (Ill. Rev. Stat. 1987, ch. 8, par. 37—15) constitutes a property interest entitled to due process protection. (*Kurtzworth v. Illinois Racing Board* (1981), 92 Ill. App. 3d 564, 588, 415 N.E.2d 1290.) Due process of law demands that a statute's proscriptions be clearly defined and sufficiently warn of the conduct prohibited, when evaluated by common understanding and practices; definiteness is required so persons of ordinary intelligence reasonably may know what is prohibited so they can act accordingly. (*People v. Jihan* (1989), 127 Ill. 2d 379, 385, 537 N.E.2d 751; *Lamar v. Illinois Racing Board* (1977), 55 Ill. App. 3d 640, 645, 370 N.E.2d 1241.) A statute is not unconstitutionally vague "if the duty is set forth in terms definite enough to serve as a guide to those who must comply with it." (*Belville v. Illinois Racing Board* (1984), 129 Ill. App. 3d 970, 976, 473 N.E.2d 500 (*Belville*).) Further, a court of review will accord substantial deference to the IRB's construction and application of its rules, unless plainly erroneous or inconsistent with long-settled interpretations. *Lamar v. Illinois Racing Board*, 55 Ill. App. 3d at 646.

Where, as here, the rule challenged as unconstitutionally

vague does not involve first amendment freedoms, it will be " 'examined in the light of the facts of the case at hand.' " (*People v. Ryan* (1987), 117 Ill. 2d 28, 34, 509 N.E.2d 1001, quoting *United States v. Mazurie* (1975), 419 U.S. 544, 550, 42 L. Ed. 2d 706, 713, 95 S. Ct. 710, 714.) Plaintiff therefore must demonstrate that the rule did not provide clear notice that his conduct in the fifth race was prohibited. See *People v. Jihan*, 127 Ill. 2d at 385.

█ In the instant case, the IRB's refusal to construe Rule 234 as unconstitutionally vague was not plainly erroneous or inconsistent with long-settled interpretations. Rule 234 imposes three affirmative requirements on jockeys: (1) ride the horse so as to finish as near as possible to first; (2) show the best and fastest race the horse is capable of at that time; and (3) ride without easing up or coasting on the horse. Essentially, this rule obligates the jockey to procure the best possible performance from a horse. According to all four expert witnesses, the only way to ensure a horse's best performance is through the use of hand riding or whipping.[1] Hartack further testified that all jockeys must try one of the two techniques at some point in the race in order to determine whether the horse will run faster, and "there isn't one rider living that doesn't know that." Arroyo, the senior steward, agreed with Hartack's testimony. Plaintiff himself admitted on cross-examination that a jockey uses hand riding "to get your horse to run his best race." Hartack stated that failure to use the techniques constitutes riding under a hold, or "coasting," which is expressly prohibited by Rule 234. The above testimony establishes the existence of a common understanding among jockeys as to how to produce a horse's best and fastest performance.

Combining this common understanding of Rule 234 with its purpose, which is to protect the wagering public from inaccurate or misleading information regarding a horse's ability, the rule is definite enough to serve as a guide for the individuals who must comply with it. (*Chastek v. Anderson* (1981), 83 Ill. 2d 502, 416 N.E.2d 247; *Belville*, 129 Ill. App. 3d 970, 473 N.E.2d 500.) Moreover, in view of the nature of the racing industry and its relation to the public, statutory terms must be given a broad meaning when challenged for vagueness. (See *Gillilan v. Illinois Racing Board* (1980), 89 Ill. App. 3d 726, 729, 411 N.E.2d 1374.) As stated in *Coleman v. Illinois Racing Board* (1988), 124 Ill. 2d 218, 222, 529 N.E.2d 520, the IRB's task is "to guarantee the honesty and integrity of horse racing in this

---

[1]According to steward Thomas Scott, the instances when jockeys do not carry whips are so rare, it is specifically noted in the program.

State [which] requires continuous vigilance, because attempts to predetermine the outcome of a race is [*sic*] an ever present and persistent part of horse-racing." In light of the facts of this case, Rule 234 is not unconstitutionally vague.

## II

■■ Plaintiff next challenges his suspension by the IRB as being contrary to the manifest weight of the evidence. Findings of fact and conclusions by the IRB, an administrative agency, are considered *prima facie* true and correct. (Ill. Rev. Stat. 1987, ch. 110, par. 3—110; *Coleman v. Illinois Racing Board* (1988), 124 Ill. 2d 218, 221, 529 N.E.2d 520.) Reviewing courts will not disturb an IRB decision unless it is contrary to the manifest weight of the evidence. (*Coleman*, 124 Ill. 2d at 221; *Benefiel v. Illinois Racing Board* (1987), 152 Ill. App. 3d 539, 542, 504 N.E.2d 827.) As previously detailed, there was ample evidence to support the IRB's findings of fact and conclusions here.

Plaintiff nevertheless insists that he, as the jockey, was in the best position to know the horse's preferences and determine an appropriate prerace strategy (specifically here, to ride Mr. Valentino without use of the whip) and that his performance resulted in the horse's running to its best ability. These contentions are rebutted by other evidence; for example, several witnesses testified that a horse's negative response to the whip would be a consistent reaction, yet plaintiff admitted he previously used the whip on Mr. Valentino in the July race resulting in a first-place finish. Also, Mr. Valentino's trainer never instructed plaintiff to refrain from hand riding or whipping during the fifth race.

Plaintiff's lengthy argument that Mr. Valentino's performance was consistent with previous efforts is irrelevant. Rule 234 does not require a performance consistent with previous efforts, but the *best and fastest* race a horse is capable of *at that time*. Here, two stewards explicitly testified Mr. Valentino would have finished closer in the fifth race if plaintiff used the aforementioned techniques, evidence which supports the IRB's finding of a violation of Rule 234.

From the foregoing, we cannot say that the IRB's findings were contrary to the manifest weight of the evidence. The circuit court's order upholding the IRB decision and suspension of plaintiff must be affirmed.

Affirmed.

DiVITO, P.J., and SCARIANO, J., concur.